**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

CHARLES QUEEN, :
:
       Plaintiff, :
:
    v. : CIVIL ACTION NO.
: 2:11-CV-00070-RWS
WAL-MART STORES EAST, :
L.P., :
:
       Defendant. :

## <u>ORDER</u>

This case comes before the Court on Defendant's Motion for Summary

Judgment [22]. After a review of the record, the Court enters the following

Order.

### Background

Plaintiff has not filed a response to Defendant's Statement of Material

Facts [22-2], and thus, Defendant's facts are deemed unopposed and admitted

pursuant to Local Rule 56.1(B).[1] Wal-Mart employed Plaintiff as a Sales

Associate at its Clayton, Georgia location from March 31, 2000 until Plaintiff

---

[1] While Defendant's facts are deemed unopposed and admitted, in light of
Plaintiff's <u>pro se</u> status, the Court has reviewed Plaintiff's brief for any allegedly
contradictory evidence and will address Plaintiff's corresponding arguments in the
Discussion.

was terminated for gross misconduct on August 22, 2010. Def.'s Statement of Material Facts ("SMF"), Dkt. [22-2] ¶ 1. During that time, Plaintiff worked the night shift and was assigned to various departments based on the stocking needs of the store. Id. ¶¶ 23-24. From March 2000 until July 2010, Plaintiff made himself available every night of the week and was typically scheduled for 40 hours each week except during Wal-Mart's typical "slow period." Id. ¶¶ 38, 40. Plaintiff's "off nights" also changed each week because of his open availability. Id. ¶ 39. Plaintiff received generally favorable employee reviews during his time with Wal-Mart. Id. ¶ 2.

However, from 2004 until his termination on August 22, 2010, Plaintiff had several incidents with other store employees. Id. ¶¶ 3-20, 41-51. In 2004, Plaintiff accused Ron Fleece, a supervisor, of having an affair with another Store Associate. Id. ¶ 2. Tim Brown, the current store manager, investigated those allegations, and after the event, Plaintiff believed Mr. Brown "harbored animus" toward him. Id. ¶¶ 3-4. In October 2005, Plaintiff was disciplined for gossiping about another Store Associate in violation of Wal-Mart's policies. Id. ¶¶ 7-8. He was again disciplined on August 18, 2009 for failing to show up or call in for his shift that night. Id. ¶ 9.

2

In 2010, Plaintiff's behavior became more disruptive.  Id. ¶ 10.  On January 13, 2010, Plaintiff threatened to fight Michael Durham, another Store Associate, in the parking lot after expressing dissatisfaction that Mr. Durham had texted a friend while at work.[2]  Id. ¶¶ 11, 14.  After finishing their shift together, Plaintiff confronted Mr. Durham again, but Mr. Durham walked away from Plaintiff's offer to fight.  Id. ¶¶ 15-16.  In May 2010, Plaintiff had a conversation with Assistant Store Manager Chris Saunders in which Plaintiff claimed that 26-year-old Beth Gragg,[3] another Store Associate, called him a "hateful person."  Id. ¶ 17.  During the conversation, Plaintiff threatened to physically harm Ms. Gragg.  Id. ¶ 18.[4]

At times, Plaintiff also expressed dissatisfaction with his work assignments, particularly on nights where his supervisor, Gina Byargeon, placed him on the grocery side of the store.  Id. ¶¶ 25, 27-29.  Plaintiff also

---

[2] Mr. Durham was replying to a friend who had recently lost a loved one. SMF, Dkt. [22-2] ¶ 12.

[3] In her written declaration taken in January 2012, Ms. Gragg stated that she was 28 years of age.  Bragg Decl., Dkt. [22-8] at 2.  Thus, at all times relevant in this case, Ms. Gragg was younger than 40 years old and outside the protected class.

[4] Wal-Mart's Workplace Violence Policy prohibits harassment and threats of violence.  SMF, Dkt. [22-2] ¶ 20.

believed that Ms. Byargeon and Ms. Gragg were "buddies" and that Ms. Gragg received favorable, easier assignments. Id. ¶¶ 31-32. Though Plaintiff referred to Ms. Gragg as Ms. Byargeon's "pet," he did not believe age was a factor in Ms. Byargeon's assignment decisions. Id. ¶¶ 32-33.

Dissatisfied with the work assignments he was receiving, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Ms. Byargeon was "giving [Beth Gragg] the better jobs" and that Wal-Mart was discriminating against him because of his age. Compl., Dkt. [1] at 3. Plaintiff notified Mr. Brown about the charge. Id.

In July 2010, Plaintiff changed his availability, requesting not to be scheduled on Friday and Saturday nights. SMF, Dkt. [22-3] ¶ 40. Plaintiff's hours were subsequently reduced, and after complaining to two Assistant Managers who informed him that schedules were generated electronically based on an employee's stated availability, Plaintiff began to believe that Mr. Brown had intentionally reduced his hours. Id. ¶¶ 42-43. Mr. Brown did not create or edit Store Associate schedules. Id. ¶ 44.

In early August 2010, Plaintiff gave another Store Associate, Spencer Connarat, a letter that Plaintiff allegedly sent to Wal-Mart's Corporate

4

Headquarters.  Id. ¶ 45.  The letter contained allegations about Mr. Connarat, leading to tension between him and Plaintiff.  Id. ¶ 46.  On August 19, 2010, Assistant Manager Gauley sent Plaintiff to Assistant Manager Adams to ask what duties needed to be completed in the grocery department for the night.  Id. ¶ 47.  However, instead of speaking to Assistant Manager Adams as ordered, Plaintiff asked another Store Associate what needed to be done.  Id. at ¶¶ 48-49. As a result of Plaintiff's insubordination, he was terminated on August 22, 2010.  Id. ¶ 51.

On January 4, 2011, EEOC notified Plaintiff that it was dismissing his charge against Wal-Mart.[5]  EEOC Letter, Dkt. [1-1] at 1.  In March 2011, Plaintiff initiated this pro se action, seeking declaratory relief, injunctive relief, and damages under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., based on allegations that Wal-Mart discriminated against him in assigning him to various departments because of his age and that Wal-

---

[5] Specifically, EEOC dismissed the charge because it was "unable to conclude that the information obtained establishes violations of the [applicable] statutes []." EEOC Letter, Dkt. [1-1] at 1.  EEOC also noted that "[n]o finding is made as to any other issues that might be construed as having been raised by[Plaintiff's] charge."  Id.

AO 72A
(Rev.8/82)

Mart reduced his hours and terminated him in retaliation for filing a charge with EEOC.  Compl., Dkt. [1] at 2-4.

Wal-Mart now moves for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure on grounds that Plaintiff cannot establish either a prima facie case of age discrimination or retaliation under ADEA. Def.'s Mem. in Supp. ("Def.'s Mem.), Dkt. [22-1] at 1-2.

## Discussion

## I.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(c).   "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).

Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the Court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). However, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

AO 72A
(Rev.8/82)

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.    Defendant's Motion for Summary Judgment [22]

Plaintiff asserts that Wal-Mart: (1) discriminated against him because of his age, and (2) reduced his hours and terminated him in retaliation for filing a complaint with EEOC.  Compl., Dkt. [1] at 2-4.  The Court considers each of Plaintiff's claims in turn.

### A.    *Plaintiff's Age Discrimination Claim*

ADEA prohibits an employer from discriminating against an employee who is at least 40 years old because of the employee's age.  29 U.S.C. §§ 623(a)(1), 631(a).  A plaintiff can establish age discrimination by either direct or circumstantial evidence.  Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1204 (11th Cir. 2010).  Direct evidence consists of "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512

8

F.3d 1296, 1300 (11th Cir. 2008) (quotation marks omitted). Evidence that

merely suggests a discriminatory motive is, by definition, circumstantial

evidence. Burrell v. Bd. of Tr. of Ga. Military Coll., 125 F.3d 1390, 1393-94

(11th Cir. 1997). Plaintiff has not provided any direct evidence of age

discrimination, and thus, the Court will consider whether Plaintiff's claim can

survive Defendant's Motion for Summary Judgment [22] based on

circumstantial evidence.

Previously, the Eleventh Circuit has evaluated ADEA claims based upon

circumstantial evidence under the burden-shifting framework of McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Chapman v. AI

Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (applying framework to ADEA).

However, in 2009 the Supreme Court held that a "plaintiff must prove by a

preponderance of the evidence . . . that age was the 'but-for' cause of the

challenged employer decision" to establish an ADEA claim. Gross v. FBL Fin.

Servs., Inc., 557 U.S. 167, 168 (2009). Because the Supreme Court has

reserved the question of whether the McDonnell Douglas framework is the

appropriate method of analyzing ADEA claims, Gross, 557 U.S. at 174 n.2, the

Eleventh Circuit now reviews such claims under both McDonnell Douglas and

9

Gross.  Hawthorne v. Baptist Hosp. Inc., 448 F. App'x 965, 968 (11th Cir. 2011).

### i.    Plaintiff's Claim Under McDonnell Douglas

Under the burden-shifting framework articulated in McDonnell Douglas, a plaintiff establishes a prima facie case of age discrimination by showing that he was: "(1) a member of a protected class; (2) qualified for the position; (3) subjected to adverse employment action; and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class."  Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002) (citing McDonnell Douglas, 411 U.S. at 802; Chapman, 229 F.3d at 1024-25 (11th Cir. 2000); Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1313-14 (11th Cir. 1994)).  If a plaintiff succeeds in establishing a prima facie case under the McDonnell Douglas approach, as modified in the Eleventh Circuit, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the alleged adverse employment action.  Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994).  Once the employer does so, the burden shifts back to the plaintiff to establish that the employer's asserted reasons for the adverse employment action are pretextual.

10

<u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).  If at this stage the plaintiff fails to "present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext[,] the employer is entitled to summary judgment." <u>Early v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990).

At all times during his employment with Wal-Mart, Plaintiff was a member of the ADEA protected-class because he was over 40 years old.  Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp."), Dkt. [25] at 2.[6]  Plaintiff was also qualified for the position of Store Associate, and he received generally favorable reviews for his work on the night shift.  Def.'s Mem., Dkt. [22-1] at 12-13; SMF, Dkt. [22-2] ¶ 2.  Thus, the first two prongs of the <u>McDonnell Douglas</u> analysis are satisfied.  As to the third prong, Plaintiff has alleged that he suffered two adverse employment actions: (1) Wal-Mart discriminated against him by assigning him to less-favorable departments; and, (2) he was terminated.  Compl., Dkt. [1] at 3.  The Court addresses each action in turn.

---

[6] Plaintiff notes that he would turn 63 on November 19, 2012.  Thus, at the time Plaintiff was terminated in August 2010, Plaintiff was 60 years old.  When Plaintiff began working for Wal-Mart in March 2000, he was 50 years old.

a. Assignment to Less-Favorable Departments

Plaintiff alleges that Ms. Byargeon discriminated against him by moving him from his regular department to the more difficult grocery department. See Pl.'s Reply to Def.'s Resp., Dkt. [27] at 2. Wal-Mart contends that being assigned to differing, less desirable departments does not constitute an adverse employment action under McDonnell Douglas. Def.'s Mem., Dkt. [22-1] at 13-14. However, even if such an assignment was an adverse employment action, Wal-Mart asserts that it had a legitimate, nondiscriminatory reason for varying Plaintiff's assignments. Id. at 17-19.

The Supreme Court has held that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). The Eleventh Circuit has also made clear that not all conduct that negatively affects an employee is considered an adverse employment action. Apodaca v. Sec'y of the Dept. of Homeland Sec., 161 F. App'x 897, 900 (11th Cir. 2006).

Based on established standards in the Eleventh Circuit, the Court holds that though Plaintiff may have been unsatisfied with his assignments, such unhappiness is not sufficient to constitute an actionable, materially adverse change. See Doe v. DeKalb Cnty. School Dist., 145 F.3d 1441, 1453 (11th Cir. 1998) ("[An ADEA] plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse."). This reasoning finds further support in the record. Plaintiff testified that employees preferred to work their regular departments "because it's a lot easier." Pl.'s Depo., Dkt [22-3] at 37. However, Plaintiff also recognized that each department needed to be stocked each night and that all Store Associates on the night shift were required to work in any department as needed. See id. at 9, 37. Thus, it would not be reasonable to view varying assignments, which could be required of all night shift Store Associates, as an adverse employment action.

Though Plaintiff cannot satisfy the third prong of McDonnell Douglas on the basis of varying assignments, the Court nevertheless considers whether Plaintiff can satisfy the fourth prong. The Court finds that he cannot. Plaintiff attempts to show that Ms. Byargeon engaged in a pattern of age discrimination by directing the Court to Ms. Byargeon's relationship with Ms. Gragg.

13

However, Plaintiff testified that he believed Ms. Byargeon "liked [Ms. Gragg] more than she did [him]" and further claimed that Ms. Gragg's gender and age were not factors in her allegedly easier assignments. Pl.'s Depo., Dkt. [22-3] at 39. The Eleventh Circuit, agreeing with other Circuits that have addressed the issue, has held that allegations of employment discrimination based on relationships or favoritism, as in this case, cannot sustain an age discrimination claim. See Platner v. Cash & Thomas Contractors, Inc., 908 F.2d 902, 905 (11th Cir. 1990) (noting that, as observed by the Fourth Circuit, favoritism does not does not constitute discrimination under Title VII).

Plaintiff further attempts to demonstrate a pattern of age discrimination by referencing Ms. Byargeon's supervision of Store Associate Miffy Wood's department assignment. Ms. Wood worked in the housewares department and was over 70 years of age.[7] SMF, Dkt. [22-2] ¶¶ 52-54; Def.'s Mem., Dkt. [22-1] at 16. Ms. Wood asked Ms. Byargeon to move her to an easier department because she had difficulty in her department. SMF, Dkt. [22-2] ¶ 54. In response to Ms. Wood's request, Ms. Byargeon moved Ms. Wood to the easier

---

[7] Plaintiff asserts that at the time, Ms. Wood was 65 years old. Pl.'s Resp., Dkt. [25] at 3. For purposes of the Court's analysis, however, Ms. Wood was over 40 years old at all relevant times, and thus, a member of the protected class under ADEA.

pharmacy department and moved a younger Store Associate to housewares.[8] Id.

¶¶ 55-60.  However, Ms. Byargeon's assignment decision in that instance only

establishes that Ms. Wood, a member of the protected class under ADEA,

received more favorable treatment that younger Store Associates by receiving

an easier assignment – not that older employees are being discriminated against

in favor of younger ones.  Therefore, even assuming that varying assignments

constituted an adverse employment action, the Court finds that Plaintiff has

failed to establish the fourth prong of his prima facie case under McDonnell

Douglas.

Even if Plaintiff could establish his prima facie case, Wal-Mart has

articulated a legitimate, nondiscriminatory reason for varying employee

assignments on the night shift.  As a retailer, Wal-Mart needed to ensure that its

stores were properly re-stocked each night.  Def.'s Mem., Dkt. [22-1] at 17-19.

Plaintiff was also aware that Wal-Mart required night-shift Store Associates to

move about the store as needed and understood that he might not work the same

department each night.  Pl. Depo., Dkt. [22-3] at 8-9.

─────────────────

[8] As Wal-Mart notes, Plaintiff and Ms. Wood never complained to Wal-Mart
about differing assignments based on their age.  Def.'s Mem., Dkt. [22-1] at 16.

Because Wal-Mart has offered a legitimate, non-discriminatory reason for its actions, Plaintiff must demonstrate that the reason is pretext for age discrimination. <u>Springer v. Convergys Customer Mgmt. Grp., Inc.</u>, 509 F.3d 1344, 1349 (11th Cir. 2007) ("A reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."). Plaintiff has offered no facts to rebut Wal-Mart's proffered justification for his varying assignments, and thus, cannot establish it was pretextual.

<u>b.</u>    <u>Termination</u>

In comparison to Plaintiff's varying assignment allegation, it is clear that termination is an actionable, materially-adverse employment action. <u>Ellerth</u>, 524 U.S. at 761. Though Plaintiff's termination satisfies the third prong of the <u>McDonnell Douglas</u> analysis, Plaintiff has failed to demonstrate that he was replaced by a person outside the protected class or that he suffered from disparate treatment because of membership in the protected class. There is no evidence in the record that Plaintiff was replaced by someone younger than 40 years of age. Furthermore, for the reasons articulated in Part I(A)(i)(a), <u>supra,</u>

16

Plaintiff has failed to demonstrate that he suffered from disparate treatment because of membership in the protected class.

Even when viewed in the light most favorable to him, the record demonstrates that Plaintiff engaged in a multitude of disruptive and insubordinate behaviors,[9] which, by themselves, could justify his termination under Wal-Mart's employee policies. SMF, Dkt. [22-2] ¶¶ 2-21. Indeed, Mr. Brown terminated Plaintiff only immediately after his insubordinate behavior on August 19, 2010. Id. ¶ 51. Based on the foregoing reasons, the Court holds that Wal-Mart is entitled to summary judgment under McDonnell Douglas.

### ii. Plaintiff's Claim Under Gross

In Gross, the Supreme Court held that "under § 623(a)(1), the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." 557 U.S. at 177. Thus, a plaintiff must demonstrate that age is "the 'reason' that the employer decided to act." Mora,

---

[9] Plaintiff claims that Store Associate Pam Trusty's statement, Dkt. [25-3] at 3, contradicts Wal-Mart's version of the incident between Plaintiff and Michael Durham. Pl.'s Resp., Dkt. [25] at 1. Ms. Trusty states that Mr. Durham approached Plaintiff, telling him that texting was "[n]one of his business." Pl.'s Ex. 3, Dkt. [25-3] at 3. However, the Court finds that this detail does not create a material issue of fact. Ms. Trusty specifically notes that Plaintiff was very upset when he discovered that Mr. Durham was texting, and the remainder of her short statement does not contradict Mr. Durham's account. See id. at 3-5.

597 F.3d at 1204. In this respect, the ADEA differs from Title VII in that age must be the sole motivation behind the employer's action and not merely a motivating factor. Id. ("[T]he employer either acted 'because of' the employee's age or did not.").

Here, Plaintiff has failed to demonstrate that his age was the reason he was given less-favorable assignments, received reduced hours, or was terminated in August 2010. To the contrary, Plaintiff's dissatisfaction with his superiors arose from his belief that his superiors and other Store Associates were "buddies," and Plaintiff stated that age was not a factor in assignment decisions. Pl.'s Dep., Dkt. [22-3] at 39. Plaintiff has also not demonstrated that the reduction in his hours was caused by his age instead of a change in his availability. The record demonstrates that Wal-Mart uses an automated computer program to generate Store Associate schedules based on their listed availability. SMF, Dkt. [22-2] ¶ 34. Furthermore, there is ample evidence in the record that Wal-Mart terminated Plaintiff's employment after several separate incidents where Plaintiff behaved inappropriately. Id. ¶¶ 2-20, 41-51. Because Plaintiff has failed to present an issue of material fact in support of his age discrimination claim and has failed to demonstrate a claim under

18

McDonnell Douglas or Gross based on the facts viewed in the light most favorable to him, Defendant's Motion for Summary Judgment [22] on Plaintiff's age discrimination claim is hereby **GRANTED**.

B.      Plaintiff's Retaliation Claim

Plaintiff claims that Wal-Mart reduced his hours in July and August of 2010 and terminated him on August 22, 2010 in retaliation for filing a complaint with EEOC in April 2010. Compl., Dkt. [1] at 3. In response, Wal-Mart asserts that Plaintiff cannot demonstrate a causal connection between Plaintiff's charge with EEOC and any reduction in hours or, ultimately, with Plaintiff's termination. Def.'s Mem., Dkt. [22-1] at 21-22.

The ADEA prohibits employers from "retaliating against employees for engaging in activity protected under the statute, including activity in which the employee opposed an unlawful employment practice or 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" Hawthorne, 448 F. App'x at 968 (citing 29 U.S.C. § 623(d); 42 U.S.C. § 2000e-3(a)). To establish a prima facie case for retaliation under the ADEA, "a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action;

AO 72A
(Rev.8/82)

and (3) there [was] some causal relation between the two events." <u>Pennington</u> <u>v. City of Huntsville</u>, 261 F.3d 1262, 1269 (11th Cir. 2001).  If a plaintiff establishes a <u>prima</u> <u>facie</u> case, the burden shifts to the defendant to put forth a legitimate, nondiscriminatory reason for the employment action as an affirmative defense.  <u>Hawthorne</u>, 448 F. App'x at 968 (citing <u>Mitchell v. USBI</u> <u>Co.</u>, 186 F.3d 1352, 1353 (11th Cir. 1999)).

In the present case, Plaintiff has failed to establish a <u>prima</u> <u>facie</u> case of retaliation under the ADEA.  Specifically, Plaintiff has not demonstrated a causal connection between any adverse employment actions and his charge with the EEOC.  It is clear from the record in this case that Plaintiff was aware that changing his availability, and thus restricting his schedule, could change the number of hours he was scheduled each week.  SMF, Dkt. [22-2] ¶¶ 34-42. There is also no indication in the record that any Store Associate, Manager, or other Wal-Mart employee created or otherwise altered work schedules.  Finally, Plaintiff filed his charge and notified Mr. Brown of the complaint several months before he changed his availability, received reduced hours, and was terminated.  Compl., Dkt. [1] at 2-4.

As well, the record demonstrates that around the time Plaintiff was terminated, Plaintiff acted inappropriately on several occasions. In May 2010, after he filed his EEOC charge, Plaintiff threatened to physically harm another Store Associate. SMF, Dkt. [22-2] ¶¶ 11-16. Later that month, Plaintiff also threatened to physically harm Ms. Gragg. Id. ¶¶ 17-18. Only after these actions, in combination with Plaintiff's other disruptive and insubordinate behavior, did Mr. Brown decided to terminate Plaintiff's employment. Id. ¶ 51. Considering the facts in the record in the light most favorable to Plaintiff, the Court cannot say that Plaintiff's hours were reduced or that Wal-Mart terminated Plaintiff because he filed a charge with EEOC. Accordingly, Defendant's Motion for Summary Judgment [22] on Plaintiff's retaliation is hereby **GRANTED**.

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [22] is **GRANTED**. The Clerk is directed to close this case.

**SO ORDERED**, this  30th  day of, July 2012.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

21